UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAMONT PUCKETT,

        Plaintiff,

    v.

JAMIE CORTES, et al.,

        Defendants.

Case No. 16-cv-05878-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

    This is a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 filed by Plaintiff Lamont Puckett, a state prisoner currently housed at the California Medical Facility ("CMF"), alleging constitutional violations during his previous incarceration at the Correctional Training Facility ("CTF"). The operative complaint is the amended complaint.[1] He alleges that on March 11, 2015, Defendants CTF Plant Maintenance Mechanics Jamie Cortes, J. Venegas, and A. Chavez violated his First Amendment rights by authoring a false Serious Rules Violation Report ("RVR") and causing Plaintiff to be placed into Administrative Segregation ("ad-seg"). Dkt. 14 at 7-10.[2] Plaintiff claims that Defendants actions were retaliatory because he had filed a grievance against Defendant Cortes on April 10, 2014. *Id.* at 4, 7-8. He seeks monetary and punitive damages.

    In an Order dated April 3, 2017, the Court screened Plaintiff's amended complaint and determined that he stated a cognizable First Amendment claim relating to Defendants based on the following allegations:

>     Plaintiff claims that Defendants Cortes, Venegas, and Chavez violated his First Amendment rights by "authoring a false, untrue

---

[1] On November 4, 2016, Plaintiff had submitted a request to submit a "replacement copy" of the complaint, *see* Dkt. 9, because he inadvertently left out page 2 of his complaint, *compare* Dkt. 1 *to* Dkt. 9-1. The Court construed this request as a motion to file an amended complaint and granted his motion. Dkt. 12 at 3; *see* Fed. R. Civ. P. 15(a) (Plaintiff may as a matter of course amend his complaint because a responsive pleading has not yet been served.). The Clerk of the Court then re-filed the amended complaint in the electronic court filing system. *See* Dkt. 14.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

and fake Serious Rules Violation Report and causing Plaintiff's immediate removal from the CTF mainline and placed into, and rehoused in 'Administrative Segregation,' aka the 'Hole.'" Plaintiff alleges that as a direct result of Defendants' aforementioned actions, he was initially placed and retained in Administrative Segregation on or about August 2014. Plaintiff further claims that during the disciplinary hearing on March 25, 2015, he was found "NOT GUILTY" of the charges alleged in the Serious Rules Violation Report. However, Plaintiff claims that even after he was found to be not guilty, he remained in Administrative Segregation and was later transferred to CMF.

Dkt. 12 at 3 (citations omitted). Plaintiff also alleged that Defendants' aforementioned actions were in retaliation for a previous grievance he filed against Defendant Cortes. Dkt. 14 at 4, 7-8. The Court then directed the Clerk of the Court to serve the amended complaint and issued a briefing schedule for the served Defendants to file a dispositive motion. *See* Dkt. 12 at 3-7.

The parties are presently before the Court on Defendants' dispositive motion. Dkt. 22. Defendants move this Court to dismiss Plaintiff's claim against Defendants Chavez, Cortes, and Venegas, for failure to state a claim that Defendants violated his rights under the First Amendment. *Id.* at 6-7. Defendants also move for summary judgment on Plaintiff's First Amendment claim against all named Defendants on the ground that Plaintiff has failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *Id.* Plaintiff has filed an opposition to Defendants' motion for summary judgment. Dkt. 30. Defendants have filed a reply to Plaintiff's opposition. Dkt. 32. Plaintiff has also filed a surreply. Dkt. 35.

Having read and considered the papers submitted in connection with this matter, the Court hereby GRANTS Defendants' dispositive motion.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The central issue presented in Defendants' motion for summary judgment is whether Plaintiff properly exhausted his administrative remedies as to his First Amendment claim. Before turning to the facts of this case, the Court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### A.   Legal Framework

The PLRA requires a prisoner to exhaust all "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies neither need to meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to exhaust properly. *Id.*

The CDCR provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. Cal. Code Regs. tit. 15, § 3084.1(e). On January 28, 2011, certain revisions to the California prison regulations governing inmate grievances became operative. *See* History, Note 11, Cal. Code Regs. tit. 15, § 3084.2. In order to exhaust all available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 ("602 appeal") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level" or "Secretary's level"). Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7. Under specific circumstances, the first level of review may be bypassed, and the 602 appeal is forwarded directly to the second level of review ("SLR"). *Id.* The third level of review ("TLR") constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. *Id.* § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).

The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added). The initial grievance must be filed within 30 calendar days of the action or event being protested, and inmates must seek review at each successive level within 30 calendar days of receiving an adverse decision at a lower level. Cal. Code Regs. tit. 15, § 3084.8(b)(1). The appeals coordinator can reject or "screen out" an appeal for various reasons, including failure to comply with the time limit, omission of necessary supporting documents, or duplication of a previous appeal. *Id.* § 3084.3(c). When the grievance is not rejected or screened out, the inmate must pursue the grievance through each level of review to exhaust remedies. *Id.* § 3084.5. A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." *Id.* § 3084.1(b).

**B.  Factual Summary[3]**

**1.  Plaintiff's Cognizable First Amendment Claim**

As mentioned above, Plaintiff claims in his amended complaint that Defendants Chavez,

---

[3] This Order contains many acronyms. Here, in one place, they are:

| | |
|---|---|
| ad-seg | Administrative Segregation |
| CTF | California Training Facility |
| CPM | Correctional Plant Manager |
| CPS | Correctional Plant Supervisor |
| OOA | Office of Appeals |
| PLRA | Prison Litigation Reform Act |
| RVR | Rules Violation Report |
| SLR | Second Level of Review |
| TLR | Third Level of Review |

4

Cortes, and Venegas "author[ed] a false, untrue and fake Serious [RVR]" on March 11, 2015. Dkt. 14 at 9-10. Plaintiff claims that Defendants retaliated against him for filing an unrelated 602 appeal against Defendant Cortes on April 10, 2014. *Id.* at 4, 7-8. Plaintiff alleges that as a direct result of Defendants' aforementioned actions, he was initially placed and retained in ad-seg on or about August 2014. *Id.* at 5-8. Plaintiff further claims that during the disciplinary hearing on March 25, 2015, he was found "NOT GUILTY" of the charges alleged in the Serious RVR. *Id.* at 8-9. However, Plaintiff claims that even after he was found to be not guilty, he remained in ad-seg and was later transferred to CMF. *Id.* at 9.

The Court found that, liberally construed, Plaintiff's allegations satisfied the pleading requirements for a First Amendment retaliation claim against Defendants Chavez, Cortes, and Venegas.

### 2. Plaintiff's Administrative Appeals

Defendants have submitted evidence that there are three administrative appeals that Plaintiff submitted to the Office of Appeals ("OOA"),[4] all of which were accepted by, and received a decision from, the OOA. Voong Decl. ¶ 6, Ex. A. These administrative appeals include log nos. MCSP-00-02301, CTF-14-00708, and CTF-14-02081. *Id.*

Besides these three administrative appeals, the record shows that Plaintiff did not exhaust any other appeals at the OOA after the third aforementioned appeal (CTF-14-02081) was denied on October 1, 2014. *Id.* The record also shows that Plaintiff submitted two other administrative appeals, log nos. CTF-15-00612 and CTF-15-00471, which were both cancelled. *Id.*, Ex. F. The Court elaborates on these aforementioned relevant administrative appeals below.

### a. Administrative Appeal Log No. MCSP-00-02301 ("MCSP-00-02301")

On September 12, 2000, Plaintiff submitted MCSP-00-02301 while he was incarcerated at Mule Creek State Prison ("MCSP"). *Id.*, Ex. B. Therein, he alleged that a correctional officer at MCSP conducted a cell search and confiscated some legal documents. *Id.* On August 3, 2001, the

---

[4] The OOA formerly was named the Inmate Appeals Branch. Voong Decl. ¶ 1. First- and second-level appeals are handled by staff located at the respective institutions, while third-level, non-medical appeals are received and decided by CDCR staff at the OOA. *Id.* at ¶ 3.

appeal was denied at the TLR.  *Id.*

### b.  Administrative Appeal Log No. CTF-14-00708 ("CTF-14-00708")

On April 10, 2014, Plaintiff submitted CTF-14-00708, in which he complained that on March 22, 2014, Defendant Cortes made "totally inappropriate and unprovoked" comments toward Plaintiff.  *Id.*, Ex. C.  Specifically, Plaintiff claimed that he was drinking coffee during a break from working at the CTF Engineer Shop, and Defendant Cortes walked by and said: "You want some cream for that coffee, that coffee tastes like d--k huh?"  *Id.* Plaintiff added that Defendant Cortes has displayed a "consistent pattern" of "entering the engineer shop [and] making vile and unprofessional comments . . . ."  *Id.*  On October 1, 2014, the appeal was denied at the TLR.  *Id.*

### c.  Administrative Appeal Log No. CTF-14-02081 ("CTF-14-02081")

On November 18, 2014, Plaintiff submitted CTF-14-02081, in which he complained that Defendant Venegas was retaliating against him for filing an appeal against Defendant Cortes.  *Id.*, Ex. D.  Specifically, Plaintiff claimed that on August 21, 2014, Defendant Venegas asked him if he was going to "drop his 602 on J. Cortez . . . ."  *Id.*  Plaintiff replied, "You have no right asking that question."  *Id.*  From August 21, 2014 to November 18, 2014 (the date CTF-14-00708 was filed), Plaintiff claimed that Defendant Venegas "ha[d] been aggressively trying to argue and provoke [him], unprofessionally calling [him] out . . . ."  *Id.*

The appeal was bypassed at the first level of review.  *Id.*

On December 2, 2014, CTF-14-02081 was marked as "ACCEPTED at the SLR on that date.  *Id.*

On January 12, 2015, CTF-14-02081 was partially granted at the SLR.  *Id.*[5]  On January 2, 2015, Plaintiff was sent a letter from the interviewer, CTF Correctional Plant Manager ("CPM") B. Homsany, and CTF Hiring Authority B. Raso, entitled "STAFF COMPLAINT RESPONSE –

---

[5] The Court notes that CTF-14-02081 was not actually marked as "Granted In Part" on the form at the SLR.  *See* Voong Decl., Ex. D; Dkt. 22-8 at 5.  However, the reviewer at the TLR notes as follows: "The SLR partially granted the appeal in that an inquiry was conducted."  Dkt. 22-8 at 2.

APPEAL #CTF-S-[14]-0281 SECOND LEVEL RESPONSE," stating:

> You were interviewed on December 17, 2015 by Anthony Wagner. In addition you were also interviewed by Bill Homsany on January 2, 2015 and you stated that Stationary Engineer Venegas has been retaliating against you regarding your complaint you filed with employee J. Cortes. You also indicated that there has been some racial discrimination by Mr. Venegas for some time.
>
> **An Appeal Inquiry has been conducted and reviewed by the hiring authority.**
>
> The following individuals were interviewed: Correctional Officer D. Duran and Stationary Engineer A. Chavez. As a result of your staff misconduct allegation the following information was reviewed: Appeal Log # CTF-S-14-02081. Staff did violate CDCR policy with the issues raised.
>
> **FINDINGS:**
>
> An Appeal Inquiry into your allegation has been/is being conducted.
>
> **ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.** As such the details of any inquiry or investigation will not be shared by staff, members of the public, or offender appellants. Although you have a right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

*Id.*, Ex. F.[6]  At the bottom of the letter, there are further instructions, stating:

> If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's Level of Review. Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted.

*Id.*[7]  Dissatisfied with the second level response, Plaintiff submitted his appeal to the TLR on February 8, 2015, stating as follows:

> I am not satisfied as the 2nd level response states: An Appeal Inquiry into your allegation has been/is being conducted. Therefore,

---

[6] The Court notes that page one of the January 2, 2015 Second Level Response was attached to the paperwork relating to appeal log no. CTF-15-00471. *See* Voong Decl., Ex. F; Dkt. 22-10 at 10. Thereafter, Defendants' attorney provided the Court with a copy of both pages of the January 2, 2015 Second Level Response. *See* February 2, 2018 Maiorino Decl., Ex. A; Dkt. 36-1.

[7] This same instruction is located at the end of every letter sent to Plaintiff from the reviewer at the SLR.

> I do not know if this appeal is complete or Investigation is continuing. I am appealing to [the] 3rd level to exhaust administrative remedies in order to file a tort with [the] Court for punitive damages.

*Id.*, Ex. D.

On April 27, 2015, Plaintiff's appeal was denied at the TLR, which stated as follows:

> Upon review of the documentation submitted, the Third Level of Review (TLR) finds that the appellant's allegations were appropriately reviewed and evaluated by the administrative staff. The TLR notes that all staff personnel matters are confidential in nature and will not be disclosed to other staff, the inmate population, the general public, or the appellant. The appellant was informed that if the conduct of staff was determined to not be in compliance with policy, the institution would take the appropriate course of action. In this case, the SLR informed the appellant that an inquiry was completed and disclosed the determination of the inquiry to the appellant. The TLR reviewed the confidential inquiry and concurs with the determination of the SLR. The TLR notes that, while appellant has the right to submit an appeal as a staff complaint, requests for: administrative action regarding staff; the placements of documentation in a staff member's personnel file; to reprimand staff; to remove staff from a position; and/or requests for monetary compensation are beyond the scope of the appeals process. The TLR finds the institution's response complies with departmental policy. Therefore, no further relief shall be afforded at the TLR.

*Id.*, Ex. D.

### d. Administrative Appeal Log No. CTF-15-00471 ("CTF-15-00471")

On March 9, 2015, Plaintiff submitted CTF-15-00471, in which he complained that CPM Homsany and Correctional Plant Supervisor ("CPS") A. Wagner failed to act when he appraised them in November and December 2014 of a "threat" made by Defendant Venegas. *Id.*, Ex. F. Plaintiff was told to "find another job" because all Defendant Venegas had to do was say he was "afraid or threatend [sic] by [Plaintiff] and they will transfer [Plaintiff] in a blink of [an] eye [with] no questions." *Id.* Plaintiff then attached documentation showing that on March 4, 2015, he was issued an RVR for threatening staff. *Id.* Plaintiff denied threatening Defendant Venegas. *Id.* On March 5, 2015, Plaintiff was placed in ad-seg based on the RVR. *Id.* Thereafter, Plaintiff was found "NOT GUILTY" of the charge of threatening staff on the RVR. *Id.*

The appeal was bypassed at the first level of review. *Id.*

On March 10, 2015, CTF-15-00471 was marked as "ACCEPTED at the SLR on that date. *Id.*

On April 17, 2015, CTF-15-00471 was marked as "Granted In Part" on the form at the SLR. *Id.* Also on April 17, 2015, Plaintiff was sent a letter from Interviewer B. Jordan and CTF Warden M. E. Spearman, entitled "STAFF COMPLAINT RESPONSE – APPEAL #CTF-S-15-0471 *SECOND* LEVEL RESPONSE," stating:

> Your appeal is PARTIALLY GRANTED in that:
>
> The following witnesses were questioned: Correctional Plant Manager B. Homsany and Correctional Plant Supervisor A. Wagner.
>
> The following information was reviewed as a result of your allegations of staff misconduct: Appeal log# CTF-15-00471; Appeal log# CTF-S-14-02081.
>
> Staff did not violate CDCR policy with respect to one or more of the issues appealed.

*Id.* Dissatisfied with the second level response, Plaintiff submitted his appeal to the TLR on May 19, 2015, stating as follows:

> Date rec[e]ived 5-19-2015, above says mailed 4-21-15 and back page says 4-16-2015, which is not the case. I[']m in a different facility thanks to . . . no action by Venegas's supervisors. Attachments #1, #2, #3 and #4 supports my claim on this very paper it says no staff reprisals will be taken. Well, twice it did.
>
> This issue has set off a chain of events that will and still is affecting me[.] [O]n the very form it says no reprisals will be taken for using the appeal process[.] Well, I was retaliated [against] and reprisals [were taken] not once but because of the non[-]action of Mr. Spearman, Mr. Wagner, and Mr. Homsany[.] This state racist employee was able to carry out his threats 3 months earlier that all parties was awa[re] of[.] But I guess cause I[']m an inmate it's justif[i]able. Under the banner of CDCR this staff member bullied [me] and almost put me in [a] mental hospital with his aggressive punishments and cruel treatment. So far this issue which [relates to] . . . retaliation and reprisals and the supervisors who let us happen twice now CDCR (CTF) is trying to cover up the facts of it[]s staff's misconduct.

*Id.*

On July 8, 2015, CTF-15-00471 was rejected at the TLR, and Plaintiff received a letter from OOA Acting Chief M. Voong entitled "RE: TLR# 1415058 CTF-15-00471 STAFF COMPLAINTS," which stated as follows:

> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(7). Your appeal is missing necessary supporting documents as established in CCR

9

3084.3.   All documents must be legible (if necessary, you may obtain copy(ies) of requested documents by sending a request with a signed trust withdrawal form to your assigned counselor).   Your appeal is missing:

- CDCR Form 1858, Rights and Responsibilities Statement
- Second Level Review Decision Letter Page 2 of CTF 14-02081

Additionally, you must attach supporting documentation which corresponds with appeal CTF-14-02081.

*Id.*  Plaintiff was allowed an "additional 30 calendar days to secure any missing documents and resubmit the appeal."  *See* Cal. Code Regs. tit. 15, § 3084.3(c).  Prison officials received Plaintiff's resubmitted CTF-14-02081 on August 24, 2015.  Voong Decl., Ex. A.; Dkt. 22-5 at 2.

On November 16, 2015, CTF-15-00471 was canceled for untimeliness at the TLR.  Voong Decl. ¶ 11, Ex. A; Dkt. 22-5 at 2.  A hardcopy of the November 16, 2015 letter has not been provided by the parties.[8]  According to the "third-level Appellant Appeal History printout," which was submitted as an attachment to Acting Chief Voong's declaration, CTF-15-00471 was cancelled because "REJECTED APPEAL NOT RETURNED IN 30 DAYS."  *Id.*  Plaintiff claims that Acting Chief Voong's November 16, 2015 letter stated as follows:

You appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(10).   Failure to correct and return a rejected appeal within 30 calendar days of the rejection. ([Voong] memo, ¶ 2).

Your appeal was rejected on **July 8, 2015**.  The rejection letter and appeal packet was mailed to your current location on **July 17, 2015**.  Your envelope containing your resubmission was signed and dated by Correctional Staff on **<u>August 17, 2015</u>** and has a postmark of August 21, 2015.   You are past the time constraints.   ([Voong] memo, ¶ 3, bold print and underline added for emphasis!)

Time constraints begin from the **date on the screen out form which canceled your appeal**. . . . .   **Keep in mind; you have 30 calendar days from the date of the OOA cancellation letter to appeal that decision.**  ([Voong] Memo, ¶ 3, Bold print added for emphasis!)

---

[8] Defendants' attorney has informed the Court that the OOA advised him that it did not retain a copy of the November 16, 2015 memorandum before sending it to Plaintiff.  February 12, 2018 Maiorino Decl. ¶ 2.  Plaintiff did not attach a copy of the aforementioned letter to his opposition, but he included in his opposition a transcription of the contents of that letter.  *See* Dkt. 30 at 12-13.  Because no dispute exists as to the content of this letter, the Court will rely on Plaintiff's transcription.

Dkt. 30 at 12-13 (emphasis added).

The record does not include any evidence that Plaintiff further pursued CTF-15-00471 at the TLR. *See* Voong Decl. ¶ 11. No evidence exists to show that Plaintiff appealed the cancellation of CTF-15-00471 in accordance with section 3084.6(e). *Id.*

### e. Administrative Appeal Log No. CTF-15-00612 ("CTF-15-00612")

On March 29, 2015, Plaintiff submitted CTF-15-00612, in which he complained that Defendant Venegas and Chavez retaliated against him for filing an appeal against Defendant Cortes. *Id.*, Ex. F. Plaintiff also claimed that Defendant Venegas and Chavez falsified a RVR against Plaintiff alleging that he threatened staff on March 4, 2015. *Id.* Plaintiff claims that he was found "not guilty" of the aforementioned RVR. *Id.* However, Plaintiff claimed that, as a result of the allegedly "falsified" RVR, he was placed in ad-seg and lost his job. *Id.*

On April 1, 2015, CTF-15-00612 was marked "Cancelled" on the form at the first level of review. *Id.* On April 2, 2015, Plaintiff was sent a letter from the CTF Appeals Coordinators, entitled "RE: Screening at the FIRST level," stating:

> The enclosed documents are being returned to you for the following reasons:
>
> Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(2). The appeal duplicates a previous appeal upon which a decision has been rendered or is pending.
>
> CTF-S-15-00471 Appeal log #CTF-S-15-00471 was assigned as a Staff Complaint on the staff indicated on this submitted appeal.

*Id.* At the bottom of the letter, there are further instructions, stating:

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary to resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.6(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

*Id.*[9]

---

[9] This same instruction is located at the bottom of every letter relating to the rejection/cancellation of an appeal sent to Plaintiff from the Appeals Coordinator at the first level of review and the OOA at the TLR.

1    In response to the cancellation, Plaintiff resubmitted CTF-15-00612 to the first level of

2    appeal, stating as follows:

3        Does not duplicate previous appeal[.]   Interviewed and told that
         CTF-S-15-00471 was [against] A[n]thony Wagner and Bill
4        Homs[any.]  This appeal identifies J. Venegas, A. Chavez, and R.
         Hancock [and is] addressed to Director of Corrections and Plant
5        Opps Supervisors.

6    *Id.*; Dkt. 22-9 at 21.  Thereafter, CTF-15-00612 was stamped as "RECEIVED" on April 9, 2015.

7    It was then bypassed at the first level of review.  Voong Decl., Ex. E.

8        On April 14, 2015, CTF-15-00612 was marked as "ACCEPTED" at the SLR on that date.

9    *Id.*

10       On May 21, 2015, CTF-15-00612 was marked as "Granted In Part" on the form at the

11   SLR.  *Id.*  On June 29, 2015, Interviewer B. Jordan and CTF Warden M. E. Spearman wrote

12   Plaintiff a letter, entitled "Staff Complaint Response – Appeal #CTF-S-15-00612 Second Level

13   Response," stating: "Your appeal is PARTIALLY GRANTED in that: The matter is still pending

14   an Allegation inquiry.  Upon completion of the inquiry you will be notified as to whether the

15   allegations were Sustained, Not Sustained, Unfounded, Exonerated or that No Finding was

16   possible."[10]  *Id.*  The letter indicated that it was "mailed/delivered to [Plaintiff]" on July 6, 2015.

17   *Id.*

18       Dissatisfied with the aforementioned response at the SLR, Plaintiff wrote as follows:

19       7-30-15 is [the] date I received [a] copy of [my] 602 [appeal] in [a]
         u-save em envelope [with] no postage.  Appellant disagrees and [is]
20       not satisfied with responder[']s version of events[,] it is not what is
         wr[itten] on this appeal!  Responder is changing my words in order
21       to cover up for staff reprisals and retaliations.

22       Venegas retaliated against I/M Puckett for exer[c]ising his right to
         file appeal on J. Cortez[,] Venegas['s] friend[.]  Once CDCR staff
23       found Venegas did violate CDCR's policies THEN Venegas, along

24

25       [10] There is nothing in the record indicating whether Plaintiff received another letter
         notifying as to whether the allegations were "Sustained, Not Sustained, Unfounded, Exonerated or
26       that No Finding was possible."  Defendants' attorney has informed the Court that CTF prison staff
         advised him that they were still attempting to locate a copy of the "advisement or letter,"
27       referenced in the June 29, 2015 response to CTF-15-00612 at the SLR.  *See* February 12, 2018
         Maiorino Decl. ¶ 2.  As the absence of such an "advisement or letter" does not affect its decision
28       on the pending dispositive motion, the Court need to wait for prison officials to locate the
         "advisement or letter" before issuing its ruling.

12

with A. Chavez, R. Hancock aggressively retaliated against I/M Puckett[.] I also noticed that somehow Venegas['s] friend, V. Martinez, was interviewed [but] he was not there[.] His testimony will be in line with his friends['] Venegas, Hancock and Chavez[.] For some reason CDCR staff is trying to cover up these staff reprisals that are common in CDCR[.] As stated early on Venegas told me [that] ["]to get rid of you all I have to do is say I[']m threatened by Puckett[.] Chavez told him how to do it to be sure that I go to ad-seg. Please read appeal I'm also attaching [as] supporting documents. (See TLR # 1415058—CTF Staff Complaints CTF-15-00471.

*Id.*

On September 24, 2015, CTF-15-00612 was cancelled at the TLR, and Plaintiff received a letter from Acting Chief Voong entitled "RE: TLR# 1502353 CTF-15-00612 STAFF COMPLAINTS," which stated as follows:

> Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4). The time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.

> The Second Level Response was returned to you on July 6, 2015. The appeal package was first received in our office on August 24, 2015. This exceeds time constraints to submit [appeal] for [the] third level [of] review.

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted. You have 30 days to appeal the cancellation. Time constraints begin from the date on the screen out form which cancelled your appeal.

*Id.*

Nothing in the record exists to show that Plaintiff submitted a separate appeal on the cancellation decision of CTF-15-00612 in accordance with section 3084.6(e). *Id.*

## C. Discussion

### 1. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of

establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendants have presented declarations from the following: their attorney, Deputy Attorney General Trace O. Maiorino; Deputy Director of Policy and Risk Management Services J. Lewis; and Acting Chief Voong. Dkts. 22-2; 22-4; 36.

### 2. Analysis

Defendants claim that the prison has no record of Plaintiff's First Amendment claim showing that it has been exhausted at the final level of review. Dkt. 22 at 13. Defendants specifically argue that Plaintiff has failed to exhaust his administrative remedies as to his claim that "Defendants Chavez, Cortes, and Venegas authored a false disciplinary report that caused him to be moved to segregated housing in retaliation for his previously filed inmate appeals." *Id.* Defendants argue that Plaintiff's claim remains unexhausted because he never submitted them to, nor received a substantive decision by, the TLR as required by prison regulations. *Id.* at 13-15.

14

United States District Court
Northern District of California

1    Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's

2    failure to exhaust his administrative remedies. *Id.* at 14.

3          **a. Defendants' Initial Burden of Proving Unexhaustion**

4        In support of Defendants' argument that Plaintiff's First Amendment claim is unexhausted,

5    Defendants submit evidence that the non-medical appeals submitted by Plaintiff do not grieve the

6    First Amendment claims against Defendants Chavez, Cortes, and Venegas. Specifically, Plaintiff

7    submitted three non-medical administrative appeals to the OOA that were accepted by and

8    received a decision from the OOA, including appeal log nos. MCSP-00-02301, CTF-14-00708,

9    and CTF-14-02081. Voong Decl. ¶¶ 5, 6; Ex. A.

10       As outlined above, a brief review of these appeals demonstrates that all three appeals do

11    not grieve the aforementioned First Amendment claim. *See id.* MCSP-00-02301 concerned a

12    staff complaint at MCSP that predates the complaint's allegations. *Id.* ¶ 7; Ex. B. In CTF-14-

13    00708, Plaintiff complained that Defendant Cortes made unprofessional comments to him on

14    March 22, 2014.[11] *Id.* ¶ 8; Ex. C. However, in the third exhausted appeal, CTF-14-02081,Plaintiff

15    complained that on August 21, 2014, Defendant Venegas retaliated against him for filing an

16    appeal against Defendant Cortes. *Id.* ¶ 9, Ex. D. As relief, Plaintiff requested for prison

17    authorities to process his appeal "for litigation purposes" and for Defendant Venegas's actions to

18    stop. *Id.* Plaintiff included these allegations in the "Factual Background and Allegations" section

19    in his amended complaint, stating as follows:

20            16.    That on or about August 21, 2014, while attempting to finish
21            an assigned work task, [Defendant] Venegas improperly inquired of
                Plaintiff whether or not Plaintiff was "going to drop his [CDCR] 602
22            [Staff complaint] against his friend [Defendant] James Cortes?"
                Plaintiff respectfully replied that it was completely improper for
23            [Defendant] Venegas to even inquire into the staff complaint
                regarding another staff member.

24            17.    That as a direct result of Plaintiff's refusing to discuss and
25            cancel the Staff Complaint against [Defendant] Cortes, [Defendant]
                Venegas has aggressively, deliberately, wantonly and intentionally

26

---

27        [11] The record is clear that CTF-14-00708 is not the basis for the instant lawsuit. Instead, as
    mentioned above, Plaintiff alleges that it was ***because*** he filed CTF-14-00708 complaining about
28    Defendant Cortes's actions that Defendants retaliated against him by filing a false RVR. Dkt. 14
    at 4, 7-8.

> attempted to "sucker" and trick [Plaintiff] into becoming involved in arguments with him [Venegas] and say something that could be considered a threat in order to have Plaintiff removed from the institutions main line and placed into the "hole" or [ad-seg] for Plaintiff's engaging in a constitutionally protected activity, that being the filing of his CDCR 602 Staff Misconduct Grievance.

Dkt. 14 at 5-6. However, under the "First Cause of Action" section, which is labeled "Violation of Plaintiff's First Amendment Rights," Plaintiff limits his First Amendment claim to the fact that Defendants authored a false RVR that led to his placement in ad-seg, stating as follows:

> 32.    That the defendants, each and every one of them, inclusive, and each of them, subjected Plaintiff, a ward of the State of California, to adverse action by authoring a false and untrue and fake Serious Rules Violation Report and causing Plaintiff's imme[di]ate removal from the CTF mainline and placed into, and rehoused in Administrative Segregation, aka the "Hole."

> 33.    That the defendants' acts and omissions as herein alleged were imposed upon Plaintiff due to [his] engaging in a Constitutionally protected activity, to wit, the filing of an official CDCR Inmate Grievance.

Dkt. 14 at 10. Thus, it is evident that Plaintiff's first Amendment claim in the instant action centers on Defendants' actions of authoring the false RVR which led to his placement in ad-seg, and not on Defendant Venegas's actions of retaliating against Plaintiff on August 21, 2014 for filing an appeal against Defendant Cortes. Thus, because CTF-14-02081 makes no mention of Plaintiff's allegation that Defendants' drafted the false RVR that led to his placement in ad-seg, the Court agrees with Defendants and finds that CTF-14-02081 fails to exhaust the Plaintiff's First Amendment claim in the instant action.

However, Defendants acknowledge that Plaintiff filed a *relevant* grievance, CTF-15-00612 (relating to his First Amendment claim) but contend that the grievance was deemed untimely at the TLR. Dkt. 22 at 14-15. The undisputed evidence shows that CTF-15-00612 was cancelled as being untimely at the TLR. Voong Decl., Ex. E.

Irrespective of the merits of Plaintiff's claim, on September 24, 2015, CTF-15-00612 was cancelled, and its cancellation as untimely is supported by California prison regulations. To be timely, an inmate is required to submit an appeal within thirty calendar days of the occurrence of the event being appealed, or upon first having knowledge of the action or decision being appealed, or upon receiving an unsatisfactory departmental response to a filed appeal. Cal. Code Regs. tit.

15, § 3084.8(b). Here, the record shows that the response at the SLR was marked as "mailed/delivered to [Plaintiff]" on July 6, 2015. Voong Decl., Ex. E. Thus, it follows that Plaintiff should have submitted an appeal to the TLR no later than thirty days later, or by August 6, 2015. *See id.* Cal. Code Regs. tit. 15, § 3084.8(b). However, Plaintiff's appeal to the TLR was received on August 24, 2015. Voong Decl., Ex. E. Therefore, CTF-15-00612 was cancelled as untimely. *Id.* Specifically, the record shows that the September 25, 2015 letter from Acting Chief Voong indicated that CTF-15-00612 was cancelled pursuant to section 3084.6(c)(4), which provides that an inmate appeal may be cancelled for the following reason: "Time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." Cal. Code Regs. tit. 15, § 3084.6(c)(4). Once cancelled, an appeal shall not be accepted except pursuant to section 3084.6(a)(3), which provides that "[a]t the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that the cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.* § 3084.6(a)(3). Here, no such determination of error was made and the cancelled CTF-15-00612 was not eligible for further review. Plaintiff was advised that he could file a separate appeal on the cancellation decision, but he did not do so. Because the "cancellation" of an appeal "does not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the evidence demonstrates that Defendants have met their initial burden of proving there were available administrative remedies for Plaintiff, that Plaintiff knew about the prison's appeal procedure, and that Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172. As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166.

### b. Plaintiff's Burden of Proving Unavailability of Administrative Remedies as to His First Amendment Claim

In his opposition, Plaintiff cites two appeals, CTF-15-00471 and CTF-15-00612, in support of his allegation that he was prevented from exhausting properly his retaliation claim. Dkt. 30 at

6, 11. Specifically, Plaintiff claims that both appeals were erroneously cancelled as untimely at the TLR. *See id.* at 11-18. Therefore, the main issue is whether Plaintiff properly exhausted the retaliation claim in the instant action against Defendants through either CTF-15-00471 or CTF-15-00612.

### 1) Arguments by Parties Relating to CTF-15-00471

First, as to CTF-15-00471, the record shows that it was cancelled as untimely because the rejection notice was dated July 8, 2015. Voong Decl., Ex. F. Thus, the resubmitted CTF-15-00471 was due "within 30 calendar days of the rejection," which is August 7, 2015. *See* Cal. Code Regs. tit. 15, § 3084.6(c)(10). Because prison staff did not receive the resubmitted CTF-15-00471 until August 24, 2015, it was cancelled as untimely. *See* Voong Decl., Ex. A; Dkt. 22-5 at 2. Meanwhile, Plaintiff claims that "the statute of limitations did not start to run on the 30 days until [he] actually received the rejection notice that had been sent from Sacramento via United States Postal Service, postmarked on or about July 17, 2015." Dkt. 30 at 14. Plaintiff does not state the exact date on which he received the rejection notices, but "for the sake of argument [he] assume[s] it was received on or about July 25, 2015. *Id.* Thus, Plaintiff argues that pursuant to the "Mailbox Rule," his resubmission of CTF-15-00471 on August 17, 2015 was "well within the thirty day limit and his appeal was timely filed." *Id.* Other than this argument, Plaintiff does not dispute that the cancellation of CTF-15-00471 does not amount to exhaustion of the specific retaliation claim in the instant action through CTF-15-00471, nor does he dispute the fact that he failed to appeal the cancellation of CTF-15-00471.

In reply, Defendants assert that regardless of whether or not CTF-15-00471 was erroneously canceled, "it would not have exhausted the claim now before the Court." Dkt. 34 at 5. Defendants point out that CTF-15-00471 concerned a claim against CPM Homsany and CPS Wagner (prison officials who are not named in the amended complaint) based on their failure to act when he appraised them in November and December 2014 of a "threat" made by Defendant Venegas. Voong Decl., Ex. F. California regulations state that an appeal must list all staff members involved and shall describe their involvement in the issue. Cal. Code Regs. tit. 15, § 3084.3(d). Therefore, Defendants argue that CTF-15-00471 could not have exhausted any claim

1    against Defendants in the instant action even if it had not been properly cancelled.  Dkt. 34 at 6.

2                    **2)  Arguments by Parties Relating to CTF-15-00612**

3            Meanwhile, as to CTF-15-00612, Plaintiff claims in a conclusory fashion that CTF-15-

4    00612 was "intentionally and wrongly rejected by [Acting Chief Voong]" because it was "timely

5    filed."  Dkt. 30 at 6.  Plaintiff does not elaborate on his arguments, but the Court assumes he is

6    again attempting to claim that he is entitled to the benefits of the "Mailbox Rule."  In CTF-15-

7    00612, Plaintiff's response in the SLR was "mailed/delivered" to him on July 6, 2015.  Voong

8    Decl.; Ex. E.  Dissatisfied with the response at the SLR, Plaintiff appealed to the TLR, but CTF-

9    15-00612 was cancelled at the TLR because his appeal was received on August 24, 2015, which is

10   past the thirty-day deadline to appeal after "receiving an unsatisfactory departmental response to

11   an appeal filed" on July 6, 2015.  *See* Cal. Code Regs. tit. 15, § 3084.8(b)(3).  The record shows

12   that Plaintiff claimed that he received the response at the SLR on July 30, 2015, and that he dated

13   his appeal to the TLR on August 4, 2015.  Voong Decl.; Ex. E.  Because Plaintiff did not elaborate

14   on his claim that CTF-15-00612 was "timely filed," the Court construes his argument to be that

15   CTF-15-00612 was timely filed because pursuant to the "Mailbox Rule," he signed his appeal to

16   the TLR on August 4, 2015, which was within thirty day time frame.  *See* Dkt. 30 at 6.  Similarly,

17   Plaintiff could argue because he did not receive the response at the SLR until July 24, 2015, then

18   he had thirty-days from that date or until August 24, 2015 to file his TLR.  *See id.*  Because the

19   appeal package was received at the TLR on August 24, 2015, Plaintiff could argue that it should

20   not have been canceled as untimely.  *See id.*

21           In response to Plaintiff's argument the he is entitled to the benefit of the "Mailbox Rule" to

22   argue that his appeal was timely submitted to the TLR, Defendants argue that such an argument is

23   "misplaced" and that "he is not entitled to relief under the mail-box rule."  *See* Dkt. 34 at 6.

24   Defendants point out that if Plaintiff believed that prison staff improperly cancelled his inmate

25   appeal, he had an available administrative remedy that he was obligated to exhaust before filing

26   suit.  In accordance with section 3084.6(e), Plaintiff was instructed that if an inmate appeal is

27   cancelled at the TLR, an inmate may appeal that cancellation directly to the TLR.  *See* Cal. Code

28   Regs. tit. 15, § 3084.6(e).  However, the record shows that Plaintiff failed to appeal the

cancellation of CTF-15-00612. Defendants argue that because Plaintiff failed to appeal the cancellation of CTF-15-00612, it remains unexhausted. *See* Dkt. 34 at 5.

### 3) Analysis Relating to CTF-15-00471 and CTF-15-00612

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to exhaust his administrative remedies properly through either CTF-15-00471 or CTF-15-00612. *See Albino*, 747 F.3d at 1166. Furthermore, the Court agrees with Defendants that CTF-15-00471 does not refer to the retaliation claim at issue in the instant action. [12] However, even if CTF-15-00471 did refer to the retaliation claim at issue, Plaintiff still failed to exhaust such a claim through that appeal properly. Finally, even if the record shows CTF-15-00612 refers to the retaliation claim in the instant action, the Court agrees that it remains unexhausted because Plaintiff failed to appeal its cancellation.

The Court finds unavailing Plaintiff's argument that he is entitled to the benefits of the "Mailbox Rule." According to Cal. Code Regs. tit.15, § 3084.1(g), "An appellate shall adhere to appeal filing time constraints as defined in section 3084.8." Cal. Code Regs. tit.15, § 3084.1(g). Meanwhile, Cal. Code. Regs. tit. 15, § 3084.8, entitled "Appeal Time Limits," states as follows:

> (a) Time limits for reviewing appeals shall commence *upon the date of receipt* of the appeal form by the appeals coordinator.
>
> (b) Except as described in subsection 3084.8(b)(4), an inmate or parolee must submit the appeal within 30 calendar days of:
>
> > (1) The occurrence of the event or decision being appealed, or;
> >
> > (2) Upon first having knowledge of the action or decision being appealed, or;
> >
> > (3) Upon receiving an unsatisfactory departmental response to an appeal filed.
> >
> > (4) There shall be no time limits for allegations of sexual violence or staff sexual misconduct.

---

[12] Plaintiff has previously acknowledged that CTF-15-00471 did not refer to the retaliation claim against Defendants in the instant action. In fact, Plaintiff had previously pointed out that the more relevant 602 appeal, CTF-15-*00612*, "[did] not duplicate" CTF-15-*00471* (which was against CPM Homsany and CPS Wagner) because CTF-15-*00612* identified named Defendants in this action. *See* Voong Decl., Ex. E; Dkt. 22-9 at 21.

20

*Id.*, § 3084.8(a), (b) (emphasis added). These regulations make clear that it is not the date of submission but the date of receipt by the appeals coordinator which defines the time constraints. *Id.* The Court notes that other than civil filing deadlines and service deadlines, the Ninth Circuit has found that the "Mailbox Rule" does not apply to *administrative* filing deadlines such as those required of federal prisoners under 28 C.F.R. §§ 542.0-.16. *See Nigro v. Sullivan*, 40 F.3d 990, 993-97 (9th Cir. 1994). Plaintiff provides no case law supporting his argument that the "Mailbox Rule" should apply to the filing of administrative appeals. Therefore, the Court concludes that the decisions at the TLR in both CTF-15-00471 and CTF-15-00612 correctly found under the regulations that Plaintiff's resubmission and appeal to the TLR, respectively, were filed beyond the time constraints and were therefore properly cancelled as untimely. As mentioned above, the PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84. "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Id*. at 92. Therefore, the PLRA exhaustion requirement requires proper exhaustion. *Id*. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted). If a prisoner had full opportunity and ability to file a timely grievance but failed to do so, he has not properly exhausted his administrative remedies. *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 88). Such is the case here.

Most importantly, even after CTF-15-00471 and CTF-15-00612 were properly canceled, Plaintiff had various options to move the appeals process forward and exhaust his administrative remedies, i.e., he could have appealed the cancellation of both appeal. Voong Decl. ¶¶ 10-11. But the record shows that Plaintiff did not pursue any of the options. *See id.*; Exs. E, F. Again, Plaintiff had filed untimely appeals, and it was also his choice to file the instant lawsuit against Defendants without complying with the PLRA's exhaustion requirement. And Plaintiff provided no evidence that Defendants prevented Plaintiff from successfully exhausting his administrative

21

remedies before filing suit.

By failing to file a timely grievance at CTF, choosing not to appeal the cancellation of CTF-15-00471 and CTF-15-00612, and instead filing the instant action in federal court, Plaintiff deprived CTF prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case," which is the purpose of the PLRA exhaustion requirement. *Porter*, 534 U.S. at 525. Plaintiff's inability to exhaust is attributable, in part, to his delay in filing his appeal and to the fact that he failed to appeal any cancellations. Accordingly, Plaintiff has not met his burden to show that there was something in his particular case that made generally available administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. In sum, Defendants have met the ultimate burden of presenting evidence of unexhaustion, which Plaintiff has not persuasively disputed. Plaintiff's filing of untimely appeals—either CTF-15-00471 or CTF-15-00612—that were eventually cancelled does not constitute proper exhaustion. *Woodford*, 548 U.S. at 84. The prison's requirements define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218. A grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue. *Woodford*, 548 U.S. at 90. The undisputed facts show that Plaintiff failed to comply with these requirements, and he has not presented evidence that precludes summary judgment.

Accordingly, the instant motion for summary judgment is GRANTED on the ground that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim against Defendants Chavez, Cortes, and Venegas.[13]

**III.  CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1.    Defendants' motion for summary judgment is GRANTED based on Plaintiff's failure to exhaust administrative remedies. Dkt. 22. Plaintiff's amended complaint is DISMISSED without prejudice to refiling his claim for monetary damages relating to his due

---

[13] The Court's finding that Defendants are entitled to summary judgment as to Plaintiff's retaliation claim (based on the failure to exhaust administrative remedies) obviates the need to address Defendants' alternative argument in their motion to dismiss.

United States District Court
Northern District of California

process claim after exhausting California's prison administrative process. *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling).

       2.     The Clerk shall terminate all pending motions and close the file.

       3.     This Order terminates Docket no. 22.

      IT IS SO ORDERED.

Dated: February 23, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge